UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06 C 1613 |
| ) | |
| BEKINS VAN LINES, LLC, a Delaware ) | JUDGE ANDERSEN |
| limited liability company; ) | MAGISTRATE JUDGE KEYS |
| and NATIONAL MOVING & ) | |
| STORAGE, INC. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S
PETITION FOR ATTORNEY'S FEES**

Plaintiff seeks a fee award in connection with this litigation, pursuant to several fee shifting statutes, and following the settlement of this matter. The fees sought are calculated at plaintiff's counsel's current hourly rates, based on the difficulty and complexity of the litigation and upon the delay in payment of fees since counsel was retained in December, 2005. Plaintiff's counsel's lodestar is $ 148,191.82 , plus costs in the amount of $2,015.21, as set forth in the Statements For Services and costs attached as Exhibit 1.

  A.  **Defendants' Actions Caused Plaintiff to Incur Significant Attorney's Fees**

This litigation arose from the destruction and loss of a significant amount of plaintiff's property, in connection with the move of all of plaintiff's household goods and business records. Defendants fought every phase of the litigation, denying any liability whatsoever at each step along the way. That process began first by removing the case from Circuit Court to this Court, then contesting jurisdiction and liability, through several motions to dismiss the Complaint. An

early settlement conference at the Court's urging left the parties literally hundreds of thousands of dollars apart. Subsequent discovery required much more than a simple Carmack Amendment case of drafting discovery and routine depositions: instead, motions to compel discovery responses, presentation of plaintiff for a nine-hour deposition, and motions on issues like "necessary joinder" were more the norm.

A review of the 89 entries currently on the docket sheet in this matter shows three motions to dismiss (one on jurisdictional grounds[1]) by defendants. While Defendant Bekins filed an Answer, (Docket #20), Bekins refused to respond to or cooperate with *any* of plaintiff's initial discovery requests, and refused to make Rule 26(a) disclosures, on the grounds that motions to dismiss were pending - even though Bekins had made no such motion. That position, in turn, required Rule 37.2 letters and conferences, and delayed any discovery from occurring for two months, until this Court ordered at a status hearing on June 23, 2006 that discovery should proceed (Docket #30). But defendants nonetheless refused to respond properly to discovery, necessitating more Rule 37.2 action, and plaintiff's subsequent motion to compel discovery responses, which this Court granted (Docket #37).

Very shortly thereafter, plaintiff sought a settlement conference, which was conducted with this Court. At the conference, defendants offered the sum total of $16,000.00 to settle all of plaintiff's claims – including attorney's fees – notwithstanding the fact that defendants already had in their possession receipts - and estimates from their own experts - showing damages to

---

[1] Defendant White Moving and Storage claimed this Court had no jurisdiction over it. *See*, Docket # 15. While that claim obviously had the effect only of inviting plaintiff to sue White Moving and Storage in Colorado, which would only perpetuate more litigation, time and attorney's fees, Plaintiff did not pursue White in Colorado.

plaintiff's property in multiples of that sum. Needless to say, plaintiff rejected the offer, and was forced to continue with the litigation. That decision was obviously the correct one, given the ultimate settlement of plaintiff's for over six times that amount, *without attorney's fees.* But it obviously took a great deal of time and effort to get there.

Defendants continued with their recalcitrance to produce responses to discovery, even positing the petty argument that the number of interrogatories with which it had been served exceeded the permissible number – by five. This Court again ordered defendants to respond to the propounded discovery. See, Docket # 43.

Wasting no time, plaintiff prepared and filed his motion for partial summary judgment on the issue of liability under the Carmack Amendment, within a month of the settlement conference. See, Docket # 46-50.

In response, defendants - who had already conducted a nine-hour deposition of plaintiff - sought to redepose plaintiff again. Obviously, that time expenditure demonstrates anything but efficiency by defendants[2]. Plaintiff absolutely contested defendants efforts, because, beyond the fact that defendants had had nine hours to ask any conceivably relevant question of plaintiff, Plaintiff had relocated to another country! Nonetheless, the total time expenditure of plaintiff in contesting the deposition, according to our review of time records, is approximately 8.5 hours, a relatively nominal expenditure for a fairly important position.

Defendants next filed a motion to join an insurance company as a "real party in interest", Docket # 65, to the litigation. While plaintiff was never required to file a response brief (because

---

[2] Nonetheless, it should be noted that defendants' time expenditures, which began five months after plaintiff first met with his counsel, total 413.7 hours in this litigation, and

-3-

the case settled), significant research effort was invested in preparing to respond to defendants' pointless motion. Instead, plaintiff's counsel spent more than 35 hours over the next three months in an ongoing effort to settle the case on the merits, which ultimately happened in June, 2007.

In sum, then, plaintiff made claims for damage to his property, and defendants disputed nearly every one of the valuations to his property. Notwithstanding that the valuations were, at times, presented by defendant's own hired repair personnel, defendant refused to ever offer any amount of money to settle any one of plaintiff's many claims for damages to each item of property which Bekins lost or destroyed in the move, until the case settled last month. This is significant, because 49 C.F.R. §370.9 *requires* that a mover make an offer of settlement within 120 days of making a claim, and §14708 provides for an award of attorney's fees if a claim is made and the customer is a prevailing party. Defendants may take the position that they had no legal obligation to make any offer of settlement under 49 C.F.R. § 370.9 once plaintiff filed suit, though §370.9 does not extinguish that obligation by its plain language. However, the point is that defendants could have long ago reduced the amount of attorneys fees incurred by plaintiff had they simply valued the lost and destroyed property, and paid or offered to pay that amount. They choose not to do so, but object to the necessary fees incurred by plaintiff as a result of their failure.

Instead, thereafter, defendants made a Rule 68 Offer of Judgment, for a total amount of $100,000.00 - *including plaintiff's attorney's fees*. Plaintiff flatly rejected that offer, and instead filed a motion for summary judgment, in which we clearly set forth the grounds which would allow the entry of summary judgment on liability against defendant. Shortly following our

substantial efforts in briefing this matter, plaintiff accepted a settlement offer of $100,000, *not including fees*. Thus, this petition is presented to the Court for adjudication, following an enormous amount of work made necessary by defendant's unreasonably protracted litigation posture.

### B. Attorney's Fees Are Properly Awarded Under The Carmack Amendment

Defendant Bekins has clung to the claim that it is not responsible for any of plaintiff's attorney's fees. Bekins has previously argued that plaintiff is not entitled to any attorney's fees, in the context of the summary judgment briefing in this case, by opposing attorney's fees based on two cases from 2004, *Yakubu v. Atlas Van Lines* and *Collins Mvg. & Stg. v. Kirkell*, both of which were written before the applicable code section allowing attorney's fees was amended in 2005. In 2005, 49 U.S.C. § 14708 was amended to include §14708(d)(3)(A). Therefore, in addition to providing shippers with notice of their dispute settlement process *before* the transportation begins, as required by 49 U.S.C. § 14708(b)(2) and 49 C.F.R. § 375.213, carriers must now also provide shippers notice of an arbitration program *during the shippers' claim settlement process*. (This only makes sense, since a shipper doesn't much care about Bekins' settlement process when there is no dispute between the parties, before Bekins has lost or destroyed the shipper's goods, so providing it at that time is practically meaningless.) Bekins never provided such a notice during the shipper's claim settlement process, and hasn't even suggested in the course of this litigation that it tried to. Failure to provide shippers with this notice permits this Court to hold Bekins responsible for plaintiff's attorney's fees.[3] Plaintiff filed

---

[3] 49 U.S.C. § 14708(d) states that shippers ***shall*** be awarded reasonable attorney's fees if "(1) the shipper submits a claim to the carrier within 120 days after the date the shipment is delivered or the date the delivery is scheduled, whichever is later, (2) the shipper prevails in such

his claim with Bekins on December 12, 2005, thereby formally starting his claim settlement process. From that time, through the present day, Bekins has never provided plaintiff with notice of its dispute settlement program, nor ever suggested or hinted that it exists, or that plaintiff had a right to participate in it. *See* Bekins' Answers to Plaintiff's First Set of Requests for Admission, No. 55, attached hereto as Exhibit 2. The drafters of the Carmack Amendment obviously believed it important to require a carrier to provide a shipper notice of its dispute resolution program – not solely in the beginning of the shipper's move, but also, in the event that something went wrong with the move and the shipper had to file a claim, during the shipper's claim settlement process. Bekins cannot now abrogate both the drafters' intent and the plain language of the statute by arguing that providing notice to plaintiff once, before he had any claim against Bekins, and at the beginning of plaintiff's multiple moves, complies with the unambiguous language of the statute.

In addition to an award of attorney's fees pursuant to 49 U.S.C. § 14708(d)(3)(A), Defendant Bekins is also responsible for plaintiff's attorney's fees pursuant to 49 U.S.C. §14708(d)(3)(B). This statutory provision awards a shipper attorney's fees when the first two elements of § 14708(d) are satisfied and the shipper's damage claim is not resolved through arbitration within the time period provided in the statute (60 days of receipt of written notice of

---

court action; and (3)(A) the shipper was not advised by the carrier during the claim settlement process that a dispute settlement program was available to resolve the dispute; (B) a decision resolving the dispute was not rendered through arbitration under this section within the period provided under subsection (b)(8) of this section or an extension of such period under such subsection; or (C) the court proceeding is to enforce a decision rendered through arbitration under this section and is instituted after the period for performance under such decision has elapsed. There is no question but that plaintiff's claim was submitted within 120 days after the shipment; and that plaintiff has prevailed in this court action.

the dispute to the arbitrator).  49 U.S.C. 14708(b)(8).  This statutory provision has been analyzed by the Ninth Circuit in *Campbell v. Allied Van Lines, Inc*., 410 F.3d 618 (9th Cir. 2005).  There, the Ninth Circuit held this provision awards attorney's fees to shippers as long as the "rendering of an arbitration decision within a certain period of time" does not occur.  *Id*. at 621.  Further, the court refused to add a limitation to the statute requiring shippers to first invoke arbitration before court action in order to request attorney's fees.  *Id*. at 622.[4]  In our case, plaintiff fully satisfied the first element of Section 14708(d) by filing a claim with Bekins within 120 days of his delivery date; this fact has not been disputed.  A decision on plaintiff's damages claim was obviously never rendered through arbitration with Bekins (since there never was an arbitration with Bekins).  Therefore, pursuant to 49 U.S.C. § 14708(d) and case law, Bekins is responsible for plaintiff's attorney's fees, if plaintiff prevails against Bekins.  Plaintiff has done so; see Exhibit 3, Order of July 27, 2007, acknowledging entry of the Settlement Agreement and Agreed Order.

     Finally, plaintiff is also entitled to attorney's fees pursuant to 49 U.S.C. § 14704.  Section 14704 awards attorney's fees to a shipper when a carrier violates the regulations issued by the Secretary of Transportation.  49 U.S.C. § 14704; *Hoover v. Allied Van Lines, Inc*., 111 P.3d 1076 (Kan. Ct. App. 2005).  In his Amended Complaint, plaintiff outlined Defendant Bekins' various violations of the Code of Federal Regulations; specifically, plaintiff alleged violations of 49 C.F.R. §§ 370.5-370.9.  Through discovery in this case, plaintiff learned that Defendant Bekins

---

[4] The Ninth Circuit considered the *Yakubu* decision cited by Bekins in its response to our motion for partial summary judgment on the issue of liability.  Finding the *Yakubu* court's interpretation of Section 14708 to be incorrect, the Ninth Circuit stated, "The reliance of other courts on Section 14708's title to support an alternative interpretation does not convince us otherwise.  *See Yakubu v. Atlas Van Lines*, 351 F. Supp. 2d 482, 490-91 (W.D. Va. 2004)..."

has also violated 49 C.F.R. § 375.211 by not maintaining an arbitration program in compliance with the regulation. In particular, § 375.211 requires carriers to design arbitration programs which do not provide the carrier with a special advantage in situations where "the claimant resides or does business at a place distant from [the carrier's] principal or other place of business". 49 C.F.R. § 375.211(a)(1). Defendant Bekins' arbitration program creates a special advantage for Bekins in that the program Bekins created for itself *requires, as a condition to arbitration, that Bekins make a final decision before an arbitration can take place.* See Bekins Summary of Arbitration Program: "Before arbitration can begin, however, you must be sure that you have exhausted your remedies through Bekins' regular claim process *and that Bekins has made its final offer.*" (*Emphasis supplied.*)(A copy of Defendant's "Summary of Bekins Customer Complaint and Inquiry Handling Procedures; A Summary of Bekins Arbitration Program; Notice of Tariff Availability" is attached hereto as Exhibit 4.) This provision allows Bekins to simply *not make* a final decision on a claim for damages - exactly as it failed to do in this case - in order to prevent a plaintiff from ever being entitled to seek arbitration.[5] That, in turn, violates the entire letter and spirit of the federal law requiring carriers to allow the shipper the opportunity to arbitrate his or her claims. Further, as plaintiff resides in Alpharetta, Georgia and Bekins' principal place of business is located in Illinois, this provision is doubly applicable to plaintiff.

Bekins' arbitration program also violates 49 C.F.R. § 375.211 because it has the effect of

---

[5] Bekins is required by 49 C.F.R. § 370.9 to communicate a settlement offer to a shipper within 120 days of the shipper's claim, or inform the shipper, at that time, of the status of the claim. Therefore, Bekins' program also violates the CFR for that reason: its program doesn't adhere to the 120 day rule.

"requiring the individual shipper to agree to use arbitration before a dispute arises" - which is specifically prohibited by 49 C.F.R. § 375.211(a)(6). Here, plaintiff *could not* agree to arbitrate his claim until he knew whether Bekins would pay him, or at least intended to pay him. Bekins had never, ever (much less within 120 days of his claim) notified plaintiff that it would pay him anything, until this matter was settled a month ago. It had also never, ever said it would *not* pay him. Thus, Bekins was requiring plaintiff, by the language of its "Rights and Responsibilities" handbook, to seek arbitration of his claim before knowing whether Bekins would make any offer to pay him anything (i.e., before his claim rose to the level of a "dispute").

Pursuant to 49 C.F.R. § 375.211(a)(2), Bekins was required to provide plaintiff with a notice of arbitration before the order for service was executed. Bekins failed to provide this notice to plaintiff and therefore also violated § 375.211 of the Federal Regulations. Plaintiff can therefore be awarded the reasonable attorney's fees he has incurred in the litigation of this matter in accordance with 49 U.S.C. § 14704, once plaintiff became a prevailing party, as discussed below.

### C.   Plaintiff Is a Prevailing Party.

Under the law defining a prevailing party, plaintiff is one. Without question, plaintiff has prevailed in this suit. Defendants have agreed to pay plaintiff $100,000.00. By any measure, the $100,000.00 settlement amount in favor of Plaintiff demonstrates that plaintiff prevailed. The measure the U.S. Supreme Court has mandated to be considered a prevailing party is simply that the legal relationship between the parties has been changed because of the litigation. *See, Buckhannon Bd and Home Care, Inc. v. West Virginia Dept of Health and Human Resources*, 532 U.S. 598, 604 (2001). Both the decision in *Buckhannon* as well as subsequent case law have

interpreted that phrase to mean that, within the context of a settlement agreement, a party has become obligated to pay the other party, upon the entry of an order by a court. *See id.*; *see also T.D. v. LaGrange School District No. 102*, 349 F.3d 469 (7th Cir. 2003).

In this case, plaintiff clearly has satisfied the requirements to be considered a prevailing party. The legal relationship between the parties clearly has been changed as a result of the litigation, as Bekins has agreed to pay plaintiff $ 100,000.00 for the damages incurred by plaintiff. The settlement agreement was entered as an order, (*see*, Exhibit 3), and the final disposition of the matter is subject to this Court's supervision and approval. Accordingly, plaintiff is indisputably a prevailing party in this matter.

### D. The Illinois Consumer Fraud Act Also Provides For Attorneys Fees

Defendant is also liable for plaintiff's reasonable attorney's fees pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, because plaintiff is a prevailing party under that statute. The statute provides:

> Except as provided in subsections (f), (g), and (h) of this Section, in any action brought by any person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

815 ILCS 505/10a(c). Thus, in order to be awarded attorney's fees under the Illinois Consumer Fraud Act (the "ICFA"), a party must bring a claim pursuant to the ICFA, and be a prevailing party. Plaintiff has satisfied both requirements here, as Count XI of Plaintiff's Amended Complaint alleged a violation of the ICFA, and plaintiff is clearly a prevailing party, as explained above.

Defendant has suggested that plaintiff is not a prevailing party under the ICFA, because

the Seventh Circuit held in *Gordon v. United Van Lines, Inc.*, 130 F.3d 282 (7th Cir. 1997), that the ICFA is preempted by the Carmack Amendments. However, that argument fails for two reasons. First, Defendant's argument overstates the holding of the Court in *Gordon*. There, the ICFA was held preempted, because the claim of fraud was directly part of the moving of plaintiff's goods. Here, on the other hand, plaintiff has plead, and was prepared to prove, that defendants charged him for storage insurance, but failed to cover his damages with that insurance; watched idly while his goods were stolen from defendants' warehouse dock by third parties, but took no steps to stop that conduct; and even refused to assist plaintiff in obtaining a police report demonstrating the theft, thus attempting to cover up their deceptive and fraudulent conduct. Those actions certainly have nothing to do with the conduct which the Carmack Amendments governs.

Second, defendants moved to dismiss plaintiff's Consumer Fraud Act claim, on grounds of preemption by the Carmack Amendment – *and lost*. Defendant's May, 2006 Motion to Dismiss Plaintiff's Amended Complaint (Docket # 17) sought dismissal of plaintiff's ICFA cause of action, because, as defendants put it, "the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBA"), has also been held to be preempted." Defs. Mtn to Dismiss, p. 7. However, on March 15, 2007, Judge Andersen explicitly rejected that argument, denied defendants' motion, and refused to dismiss plaintiff's Consumer Fraud Act claim. Thus, on June 25, 2007, the date the parties signed the Settlement Agreement in this action, plaintiff had pending a valid cause of action under the ICFA. Accordingly, any suggestion that the claim was preempted is patently incorrect.

     **E.    Plaintiff Should Be Awarded The Total Lodestar Amount of Attorney's Fees Incurred in This Matter**

Plaintiff is entitled to be awarded at least the full amount of plaintiff's lodestar in this matter. The U.S. Supreme Court has explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (U.S. 1983). This is the method used by plaintiff's attorneys in calculating the amount of fees sought pursuant to this petition. Plaintiff's time expenditures are as set forth in Exhibit 1; and plaintiff's counsel's rate is undeniably at or below the "reasonable hourly rate" for counsel, as set forth in the affidavits attached Plaintiff's Petition for Statutory Attorney's Fees.

Defendants have suggested that the amount of fees awarded to plaintiff must be in direct correlation to the amount of the judgement or settlement that plaintiff obtains. This argument fails, however, as it is a patently incorrect statement of the law. Indeed, as several courts have recognized, "any defendant in a fee-shifting case that involves small stakes would make the litigation impossible for the plaintiff by defending to the hilt and, if unsuccessful, contending that the requested fees are disproportionate to the recovery. The problem was thoughtfully discussed by the Seventh Circuit in *Matter of Pine,* 705 F.2d at 938-39." *Gramercy Mills, Inc. v. Wolens* 1996 WL 562460, p.14 (N.D.Ill.,1996). That is exactly what defendants have done here, and they should not be rewarded for their delay in resolving plaintiff's claims.

Instead, one of the most important factors to consider in determining whether a fee award is reasonable is to examine the "results obtained" in the matter. *Id.* at 434. In addition, "a comparison between the damages sought and those awarded is highly relevant to the

reasonableness of the fee petition." *Johnson v. Kakvand*, 192 F.3d 656, 662 (7th Cir. 1999). Both of these standards weigh in favor of plaintiff being awarded the full amount of fees sought.

In plaintiff's original complaint, plaintiff alleged that his damages were approximately, or "in excess of", $100,000.00. *See* Pl. Complaint, ¶¶ 62, 72, 83. Accordingly, it is clear that the ultimate settlement award of $100,000.00 in favor of plaintiff demonstrates that plaintiff achieved excellent results in this matter. In addition, a comparison between the damages sought and those awarded shows that the two amounts quite close. Therefore, even though the amount of fees sought is greater than the amount awarded to plaintiff, this fact is irrelevant to the determination of whether plaintiff's fee petition is reasonable.

Finally, it is important that the Court focus on the results achieved pursuant to the litigation as a whole. Although previous statements by defendants suggest that they may attempt to argue plaintiffs fees should be reduced by the amount of time spent on claims not allowing for statutory fees, this argument is without merit. As the U.S. Supreme Court has explained,

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional circumstances, an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley*, 461 U.S. at 435. This quote is directly applicable to this case. As explained above, the award obtained by plaintiff in this matter can fairly be described as an excellent result. Therefore, even assuming *arguendo* that plaintiff did not prevail on "every contention raised in the lawsuit," plaintiff's fee award should not be reduced on that basis. Accordingly, plaintiff should be awarded the total amount of fees requested in this petition.

### F. <u>Conclusion</u>

In sum, plaintiff is clearly a prevailing party, and is therefore entitled to receive attorney's fees for the entire amount of Plaintiff's counsel's efforts in this matter. For the foregoing reasons, Plaintiff Douglas Brooks hereby requests that this Court grant Plaintiff's Petition for Attorney's Fees.

Dated: August 16, 2007

                Respectfully submitted,

                <u>/s/ Jeffrey Grant Brown</u>
                Jeffrey Grant Brown

Jeffrey Grant Brown
Converse & Brown, LLC
105 West Adams Street
Suite 3000
Chicago, Illinois 60603
#6194262

## **CERTIFICATE OF SERVICE**

I, Jeffrey Grant Brown, an attorney, certify that on August 16, 2007, I electronically filed the foregoing Plaintiff's Memorandum in Support of Plaintiff's Petition for Attorney's Fees with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following Filing Users:

>Jonathan P. Stringer
>Dombroff & Gilmore, P.C.
>10 South LaSalle Street
>Suite 1120
>Chicago, Illinois 60603

>Respectfully Submitted,

>/s/ Jeffrey Grant Brown
>Jeffrey Grant Brown

Jeffrey Grant Brown
Converse & Brown, LLC
105 West Adams Street
Suite 3000
Chicago, IL 60603
312-789-9700
# 6194262